The final case for this morning, Cheng v. Attorney General. I think we're in the passage now. I'm so used to hearing these in the mornings. Yeah. I'm not going to get anywhere with this. May I please record? Mr. Cox? Yes, may I please record Theodore Cox for Ms. Cheng? A while ago I was arguing a persecutor bar case before a panel of the Second Circuit and then Judge Sotomayor asked, Mr. Cox, don't you know that any unwanted touching of a woman can be extremely traumatic? This was in a slightly different context from this case. But I submit, and that's my first argument, that a forced IUD insertion is per se extremely traumatic. It is persecutory. MFW was wrongly decided and should not be deferred to on that point. Well, MFW dealt with whether insertion of an IUD is sterilization. Yes, I assert that it is sterilization. And even under the terms of that station, MFW pointed to the permanency of the procedure. What is sterilization? Vassal ligation, tubal ligation, hysterectomy, all those things would constitute sterilization. And MFW, without foundation, says that those are more permanent than IUD. Whether we agree or disagree, like the Second Circuit, isn't the BIA entitled to Chevron deference on that conclusion? Well, I assert that it's not. I mean, what expertise does the BIA have in this area of women's anatomy? I just think Chevron deferred to the EPA's expert on certain pollutants. I don't think that the plain language rules here that other resistance – I mean, if you just read the statute,  prevention of a forceful operation to prevent pregnancy, it names sterilization. But a forced IUD is also a forced operation to prevent a pregnancy. Is there any kind of birth control that is not sterilization? You seem to have a broad view of what sterilization is. Well, if it's forced, I would say if a forced procedure against the will of the person, I argue, is sterilization. So it's the element of force rather than the effect of it. Yes, because the effect is reversible in almost all cases, even though a reversal of a tubal ligation or a vassal ligation is, in a minority of cases, problematic. But in this case, I mean, the MFW still leaves it – just leaving the door open. This was a very thuggishly implemented procedure and a thuggishly – you know, enforcing it and thuggishly implementing it. I mean, against the screams of a woman who was being inserted in an IUD. This is against any kind of recognizable medical procedure that we would consider legitimate in our country and under our laws. Are you reserving time for rebuttal? Yes. I had requested five minutes. Should I have announced that in the beginning? Yes. I apologize. Okay. We're all set. It's reset. Go ahead. Okay. Thank you very much. You know, other – and also, other resistance is – Yeah. You're focusing on the IUD. What you are trying to show, according to your brief, is that she resisted China's one-child policy. And as a result of that resistance, she was persecuted. That's exactly right. She resisted by running away, illegally having a child, initially refusing enforcement of sterilization or IUD, being dragged to the procedure, being painfully – you know, against her pain and shouts, the procedure was inserted, detaining the husband, taking away the family farm. I mean, these are all extraordinarily coercive acts that I also argue set this apart from just the – from other types of forced IUD, so that this is an extremely aggravated case that she was persecuted. And having a record of such avoidance of the family – and violation of the family planning policy, she certainly would be in serious trouble if she were sent back. Would you say that – it seemed like the BIA was focusing on the IUD insertion in its persecution analysis. Would you take issue with that? Is there any reason why we can – any basis for concluding that an IUD insertion amounts to persecution? I mean, the purpose is birth control. That's right. But it seemed like the BIA was focusing on the IUD insertion as persecution. Well, we've argued – we're arguing that the – that it is persecution, whereas here you have the – it's permanent in the sense that she would be subject to quarterly checkups for her entire fertile life until 49. Every person – every woman in China who has a child – I shouldn't say that – in certain regions of China has an IUD insertion. Is that – Well, they might be voluntary. That doesn't mean they're being persecuted. According to the – yes, that's right. And according to the State Department and whatnot, they're encouraging with incentives and other ways to have voluntary IUDs. I mean, this type of case should go away. According to the State Department, this is all going to be voluntary very soon, if not – if it isn't already. These will be – this type of coercion should not be occurring. But for those that it did, and for the cases as here where it did occur, it is persecution. What makes this case different from the garden variety IUD insertion, birth control type of case? Well, I argue that routine persecution is still persecution. But in this case, we had her extremely rough treatment. She was considered a family planning violator already at age 20, I believe, and told that she could never have another child no matter what. Her treatment in terms of being mishandled and dragged and roughly treated in the operation itself is persecutory. I think that the way that this case is distinguished from other cases in the type of treatment, threats to her family, taking the farm and detaining the boyfriend are all thuggish behavior that – Well, the boyfriend was detained because he hit someone, right? Yes. He got into conflict to oppose the IUD insertion that was being imposed on his now wife. That's right. And there are a lot of cases that hold that one instance of violence not – is not necessarily persecution. Well, he's not the applicant in this case. I'm talking about the one instance – I'm not talking about the boyfriend. I'm back to the petitioner. That one instance of violence is not persecution. There has to be more. There has to be a continuity. There has to be infliction of pain at different intervals. Well, what's more in this case is that she was, for five years, going to quarterly checkups and faces – and has abandoned those checkups. I mean, she's now – has not been reporting. She's now violated by having two more children and faces persecution on those grounds, as she asserts, if she were to be returned. But the BIA – let me just get to the nexus point. The BIA didn't decide on the grounds of no persecution in this case. And as the government argued, let's assume persecution and talk about nexus. The BIA, in this case, for whatever reason, said that there was no demonstration of a nexus to a protected ground. And I find that extremely puzzling and hard to even – hard to even understand when she did – at every point she was asked to comply with a family planning directive, she disobeyed and did things that she was not supposed to do. And the statute is written to deem all of this persecution on account of political grounds. So it's as if the BIA is going back to 1989 matter of Chang, when there again, or there for the first time, they said, you know, it's all – family planning is all well and good, but it's not on account of a protected ground. There's no nexus. So they seem to be reversing what Congress has done by enacting the statute by saying there is a nexus requirement when there is family planning persecution, as there is here. Do you disagree with the idea there should be a nexus requirement? Well, I – no, but it is deemed by Congress to exist in family planning cases. The statute says it. And that – why does not – how could that not cover this case? Your argument, as I understand, is that she opposed the one-child policy and as a result of that, which is the nexus, she was persecuted. In other words, the persecution was a result of her opposition. Yes, it was her – she had a child. Don't you need a nexus between the cause and effect? Well, for the family planning enforcers, she – her violation of the policy triggered their enforcement of it against her. Okay. Thank you. Mr. Cox, thank you very much. Thank you. The real Ms. Cipolli. May it please the Court. Brianna Stripley on behalf of the respondent, the Attorney General. In 1996, Congress carved out an exception to the definition of refugee in the INA for Chinese aliens in response to China's course of family planning policy. Subsequently, there has been an influx of Chinese refugees seeking asylum in the United States and also an explosion of litigation on this ground, which I'm sure this circuit as well as its sister circuits have seen. It's the Board of Immigration Appeals that has been charged with the very difficult task of dealing with these sensitive facts and parceling out which cases are those that warrant asylum. Apart from that, why wasn't there persecution in this case? I mean, I think it seems clear that she was opposing the one-child policy, and the threshold for coming to that conclusion is very low. In fact, I think that the BIA pretty much conceded that she was opposing the policy. So the BIA then says, but there's no nexus between that and the IUD insertion, which seems to me to be misplaced because I get the impression the persecution is a little bit of that, but also they took away the family farm, they took away the truck that the family owns, and then they said to them, you can't work on the farm anymore, and by the way, we may take your daughter away, and we just might keep your boyfriend in jail a couple extra months, et cetera, et cetera. It seemed to me that that was the persecution as opposed to the IUD insertion. Why isn't that analysis correct, and why isn't that persecution on account of her opposition to the one-child policy? Respectfully, we would disagree that she showed other resistance. This is a claim of the insertion of an IUD, and then therefore, under the INA statute, the INA, when they carved out the exception, said, okay, abortion. That's going to be per se grounds for her, and you don't need to show the nexus grounds. Sterilization, same thing. That's going to be per se. You don't need to show it, but other resistance. What you're saying is that the economic sanctions or deprivations involving their livelihood that are being taken away don't amount to persecution. Is that what you're saying? Well, respectfully, in this case, we would argue that the economic persecution didn't rise to the level necessary to constitute a separate ground. So economic persecution can be as far as relief. The ground is opposition to a birth control or one-child policy. I don't think there's any question about her opposition. First, we would disagree that she actually demonstrated resistance to the insertion of the IUD, and that's because in a couple reasons. One, the record doesn't compel that finding. First, with regards to it, the board has held that misgynecological exams can constitute other resistance to the family planning policy. But in this case, the misgynecological exams were after the fact, and she said, because I worked in another city, sometimes I did not return back on time for checkups. With regards to the IUD, she's never removed that. She had it removed in the United States. In a matter of MFW, the board has commented on another case saying that where the alien has an IUD inserted, and then leaves it in for 11 years and has no other examples of resistance, the board found that under those facts, it cannot support a finding of resistance to China's family planning policy. Your position is that she did not oppose China's one-child policy? I mean, the statute says opposition to. Is that the correct phrase? Other resistance. Other resistance. Correct. The board has three requirements for showing asylum eligibility in other resistance cases. First is that the alien must show that the resistance to the family planning policies. And we would contest that she didn't resist on these specific grounds. Second, they must show that the harm rises to the level of persecution. We conceded that the harm in this case are the aggravated circumstances. But the third and final one is that they must show that the persecution is because of the resistance to the family planning policy. And it's almost inherent in this that if petitioner doesn't show that she resisted, then the persecution couldn't be because of that other resistance. Let me ask you this then. On what basis or why did the officials in China take away her farm, her truck, her means of livelihood, and tell her she can't work in the farm anymore? What was the reason for that if it wasn't because she was opposing the policy? Or resisting the policy. Your Honor, in this case, petitioner was unmarried. And in that case, that is only married couples are sanctioned to have the one child. So it very well could be, as is supported by this record, that those sanctions could have come as a result of that. As a result of what? As a result of not being married and having a child out of not an essentially illegitimate child because they weren't formally married. Because they couldn't be married based off of. Is that recognized in the statute passed by Congress concerning resistance to family planning policy? No. And this is where this whole field of litigation is evolving is because Congress only specifically stated abortion and sterilization. And then they grouped in this other third level, which is other resistance. You were starting to say, I thought, that the family planning policy applied only to married couples, and that the resistance to illegitimate children and children of people below the age of marriage was a different policy, which is not incorporated in the statute that Congress passed. I apologize. I did not mean to miss. I was responding to Judge Fuentes, and his question, I thought, was to say, well, why would they take this if it wasn't in opposition to the family planning policy? Is it your position that resistance to a policy to penalize illegitimate children is different than resistance to the family, one-child family planning policy? For the one child, there are two different penalties. So, in essence, yes. Basically, in this case, it's well established that in 2002, the country report states that the one-child policy went into effect. The national law said that it was common practice for once a woman had a child, regardless of the married status, it doesn't specify to that. Once a woman has one child, they are required to have an IUD inserted after the birth of their first child. In 2002, there were approximately 6.5 million IUD insertions. Were there any penalties imposed in this case because it was an illegitimate child to an underage woman as opposed to whether it was a violation of the one-child policy? Respectfully, Your Honor, in this case, the record doesn't specify what necessarily the intent was. We argue that there is no intent that it was because of her resistance. Of course, the events did happen, and the IJ found that she was credible in her testimony. And that's correct, Your Honor. It is a possible way to construe the facts that because of the fleeing and things like that, that this could have led or could have been a reason for the IUD. It's a possible construction, but the standard of review here is substantial evidence. It doesn't compel the finding. It's much – it's also an acceptable reason that because every woman who has one child, like Petitioner in this case, has an IUD insert into her, according to the national law of China, that that was the reason the IUD was inserted. And under the standard of review here, the record simply does not compel a contrary finding. It's just hard to make from the record to make sense out of the economic sanctions that they imposed and the threats that they made concerning her child and her boyfriend, et cetera, in any context other than resistance. And I can understand Your Honor's concern with this. The record does also, in the country report, allude to the fact that as much as it's not condoned by our society, but that family planning officials do, as a regular matter, pressure and persuade and use other forms to basically have the alien make their own decision to have an abortion or sterilization by using pressure tactics. And that is essentially what happened in this case, and that's documented in the country report as actually being a common practice as well. I would like to raise – Is the family still without the farm? It's unclear from the record what the status is pertaining to anything developing after this record. But I will note that with – Well, developing after this record, as the time we're hearing, is the family still without the farm? I'm unaware of any of that, Your Honor. There are a couple of things that I'd like to raise, though, in recordance that – I know this Court does have the Levy Attorney General decision, which pertains to what rises to the level of economic persecution. In Lee, this Court found that in the aggregate, a fine for more than a 20-month salary, being blacklisted from a government or legitimate job, a loss of health benefits, school tuition and food rations, coupled with the confiscation of household furniture appliances for a relatively poor family, was a deliberate imposition of a severe economic disadvantage, which could threaten this family's life and freedom. In this case, however, the aggregate disadvantage is less severe. I will admit that it does seem substantial, but under that – Sounds like a loss of livelihood to me. Well, Your Honor, if Lee is our kind of level that we're guiding under this, Petitioner never specified what the fine amount was. They were able to find, both her and her husband, employment in the city, so they were able to obtain new jobs afterwards. They never had a government job, so unlike Lee, the Petitioner in the Lee case, they never lost their health benefits or school tuition or food rations. And the truck and the farm, although being the parents, there was no testimony if this was their sole livelihood or what other resources they had. It was simply just a statement on that regard. And there's a Seventh Circuit decision in Capreek v. Ashcroft that says the availability of other sources of income has been a key factor in assessing the impact of economic sanctions. Moreover, I would point that in this case, in the Second Circuit, the Guan Shan Liao v. Department of Justice case, which is a 2002 decision, says that no testimony or other evidence was presented regarding Petitioner's income of China. Essentially, the argument is the Petitioner's burden to put it into context, to show if the harm was severe enough, you've got to say what you had to begin with, what your net income was, how it played into that, and none of that evidence was offered in this particular case. I would also like to point out to the Court that Petitioner's testimony is accepted as credible. So everything included in her affidavit attached to her asylum application is accepted as the truth. However, she was also under oath during an interview at one of the immigration proceedings, and it seems to paint a little bit different picture of what happened when the family planning officials decided to insert the IUD into Petitioner. Well, you can't go back and re-decide the facts, can you? No, Your Honor. I just wanted to point out that all of this is in the record. And so it's not to say that it's not true. It's just to paint the full picture. She says, they wanted to sterilize me. And her attorney asked her, but am I right that they didn't do that because you persuaded them to simply have you wear an IUD? Is that right? Is that what happened in the past? She responded, yes, that's true. I asked them, and they just inserted the IUD in me. They didn't sterilize me. What's wrong with that? It's kind of a lesser of two evils. I understand that. However, we have a picture of her being. Oh, I'm sorry, Your Honor. I'm sorry to interrupt you, Ms. Tripoli. Wouldn't the incident with the abortion show resistance? Well, the standard, Your Honor, respectfully, is that she has to resist the family planning policies. There's nothing in the record to indicate that a forced abortion is part of the Chinese family planning policy. In this case, what's codified in their national law is that it requires a woman who's had one child to have an IUD, a birth control, inserted into her to comply with that. And so in this case, there's no formal policy, and even if it does, the basis of this case really boils down to that it wasn't a retaliatory measure. It wasn't because of some former transgression. It was because she had one child, and that was the common procedure under China's national law at that time. As despicable as it may be to, or immoral to people in this courtroom, that was the case. The board's decision is reasonable in matter of MFW and should be given Chevron deference. Let me stop you right there. In addition to the Second Circuit, are there any other courts of appeals that affirmed MFW? Your Honor, there is one other court that has in an unpublished decision, the Fourth Circuit and Chen v. Holder, did also evaluate their case of an IUD insertion, whether it constitute other resistance and provided Chevron deference to the board's decision, MFW. It is unpublished, but it is located at 313 Federal Appendix 625, and it's a 2009 case out of the Fourth Circuit. Were these cases where there were the other fines and penalties applied beyond the insertion of the IUD? Well, to be quite candid with the Court, in both of these cases they didn't move past the first finding in MFW. So in both cases they, for example, in the Huang case, they found that they didn't exhaust whether or not there were aggravating circumstances surrounding the IUD or whether it was the nexus ground. So they resolved it on the first issue, so it doesn't really provide much insight on those. But we would submit to this Court, I see that my time is up, but that this is a reasonable interpretation. You have to understand that, you know, 6.5 million people in China in 2002 alone had an IUD inserted into them. Well, in this case we're dealing more than just an IUD insertion, aren't we? Correct, Your Honor. But also for the reasons that we also stated prior to, the economic persecution falls below what is needed. Petitioner has not compelled a contrary finding upon this Court, and so we would respectfully ask this Court to deny the petition for review. Judge Aldershot has a follow-up question. Oh, pardon me, Your Honor. I think Judge Roth alluded to what I was going to ask, that when we compare the facts in MSW with the facts here, there are additional facts in the present case not present in the MSW case. Is that right? Well, you know, obviously the cases aren't one-to-one, but we would also argue that matter of MSW had more severe facts. Let me just answer the question. There used to be a TV show called Jack Webb. He was Sergeant Friday. He was just saying, just the facts, ma'am, just the facts. I'm asking you, are there not? And I'm not asking, I'm quizzing. Aren't there some substantial facts present in the case before us that were not present in MSW? Yes, there are different facts. What are they? What are those different facts? For one, I would like to emphasize that in matter of MSW, there's a distinguishment because it was actually a reinsertion of an IUD case. So an IUD was forcibly inserted, which caused her health problems and discomfort in MFW. That was part of the testimony, which is similar to here where she said there was discomfort. She had the IUD removed privately by a private doctor. She missed appointments. She missed her gynecological appointments because she was afraid that they would catch that there was no longer an IUD in her uterus. She was detained and harassed, according to her, until she agreed to have it reinserted. And this is all a matter of MSW. She agreed finally after detention and harassment to have it reinserted. And the board found that she did not demonstrate other resistance to the second IUD because she still failed to demonstrate, as in this case, that the reinsertion was to penalize her for taking out the first one. So in this case, there's no... Here's what I would have appreciated had you said, yes, there are differences. First, they were going to give her an abortion and she resisted and so forth, and this was the next highest card on the part of the authorities. There was the... Her property, including land and a truck, were confiscated. Her husband was detained briefly. She had to participate in a reeducation program. She had to pay double fees for her daughter's education. Those are things that were not present in the other case. We concede that at least. Yes, Your Honor. Those aren't present in the MFW decision of a recitation of the facts, correct? Okay. All right. Thank you. Thank you very much. Mr. Cox. Thank you, Your Honor. Just briefly, there's only been one precedent decision upholding MFW so far. It's the Second Circuit Huang case. I just would like to point out that the facts in that case was pure IUD insertion and removal. There was no other story besides those bare facts. The other thing I just want to point out was that the petitioner in that case waived by failing to argue the whole other resistance issue, and the court deemed it waived for failure to argue it. It really was, I think, on those two points, quite distinguishable from the case that we have here. Mr. Cox. Is this Stripoli? Mr. Poli says that I don't have too much of a problem with persecution personally, but the resistance. She said there was no resistance, or there was no showing of resistance to the one-child policy in China. Could you tell me what the record reflects in terms of this Chang's resistance to the population program in China? Well, it seems to me that the BIA, the board, wants to define resistance as a demonstration in writing slogans. I fail to understand what the BIA would consider. What does the testimony reflect in the record? Well, we have her resistance by violating the policy. The policy is you can't have a child unmarried, and she had a child unmarried. The policy says she had to have an abortion, and so she ran away from the authorities. I mean, evading authorities trying to control you is resistance. What else could resistance mean? The authorities are trying to do things to you, and you're evading them and running away. They took her farm and the truck in order to compel her. If the things that they did to compel her to have the IUD inserted were to overcome her resistance, if they weren't overcoming her resistance, what were those things for? She gave in, and the government, at least at that, and forcing her to have the IUD succeeded in overcoming her resistance to all those birth control measures, which she didn't want. Did the BIA make any determination on that aspect? No, they didn't. They just said even if she was persecuted, there's no nexus. I mean, that's where the BIA came out. It said something about MFW that wasn't clearly applied to this case. So I think that the BIA really wasn't clearly, it was very unclear on that point. If there are no other questions, I thank the Court for considering the case. Thank you, Mr. Cox. Thank you both for your arguments. We'll take the case under advisement. We'll take a short recess and then come back. Judge Aldersard, can we just take a recess and come back in five minutes? Five minutes, I'll be back. I'll be here. Okay. Take a recess. Mr. Gratz, this court is adjourned until tomorrow, 13 at 5 a.m. Thank you.